**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PRIME CORE TECHNOLOGIES INC.,<br>*et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered) |
| PCT LITIGATION TRUST,<br><br>        Plaintiff,<br><br>        v.<br><br>OVAL LABS, INC. and OVAL FINANCE,<br>LLC,<br><br>        Defendants. | Adv. Pro. No. 25-50438 (JKS)<br><br>**Related Adv. D.I. Nos. 1, 7, 8, 13, 16, 29<br>and 33**[2] |

**OPINION**

Before the Court is the defendants Oval Labs, Inc. ("Oval Labs") and Oval Finance,

LLC's ("Oval Finance" and together with Oval Labs, "Oval" or "Defendants") motion to

dismiss[3] the Complaint filed by PCT Litigation Trust ("PCT"), pursuant to Federal Rule of Civil

---

[1] The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528).

[2] Citations to D.I. __ reference the docket in the lead bankruptcy case and citations to Adv. D.I. __ reference the docket in this adversary proceeding.

[3] Adv. D.I. 7 (Motion of Defendants Oval Labs, Inc. and Oval Finance, LLC to Dismiss the PCT Litigation Trust's Complaint Pursuant to Fed. R. Civ. P. 12(b)(5) and (6) and Fed. R. Bankr. P. 7012(b)) and Adv. D.I. 8 (Memorandum of Law of Defendants Oval Labs, Inc. and Oval Finance, LLC in Support of Their Motion to Dismiss the PCT Litigation Trust's Complaint Pursuant to Fed. R. Civ. P. 12(b)(5) and (6) and Fed. R. Bankr. P. 7012(b)).

Procedure 12(b)(6), for failure to state a claim (the "Motion to Dismiss").[4]  For the reasons set forth below, the Court will grant, in part, and deny, in part, the Motion to Dismiss.[5]

## JURISDICTION

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

### A.  Procedural Background

On August 14, 2023, Prime Core Technologies Inc. and its affiliated debtors ("Prime" or "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

PCT was created pursuant to the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors[6] (the "Plan"), which was confirmed on

---

[4] The Defendants also moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(5).  Adv. D.I. 7 and 8.  The Court addressed that issue in a prior letter Opinion (Adv. D.I. 29) and Order (Adv. D.I. 33).

[5] PCT filed an opposition to the Motion to Dismiss (Adv. D.I. 13) and the Defendants filed a reply brief in support of their Motion to Dismiss (Adv. D.I. 16).  The Defendants filed a Request for Oral Argument (Adv. D.I. 22) and Notice of Completion of Briefing.  Adv. D.I. 27.  The Court did not hear oral argument on either motion because the facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument.

[6] D.I. 592.

December 21, 2023,[7] and went effective on January 5, 2024.[8]  PCT was established to, among other things, commence, litigate and settle Vested Causes of Action (as defined in the Plan).[9]

On March 13, 2025, PCT commenced this adversary proceeding by filing the Complaint to, among other things, avoid and recover $26 million of fiat currency and cryptocurrency from Defendants on account of alleged preferential transfers or constructive fraudulent transfers. Specifically, Counts I and III seek to avoid and recover Transfers, pursuant to 11 U.S.C. §§ 547 and 550, totaling not less than $4,761,993.13 (USD) (after taking into account Defendants' alleged affirmative defenses), 1,000 Tether ("USDT"), 0.76 Ethereum ("ETH"), 9,987 USD Coin ("USDC"), and 0.95 Bitcoin ("BTC") (collectively, the "Transfers"), that the Debtors transferred to Oval during the 90-day period prior to the commencement of the Chapter 11 Cases (the "Preference Period").[10]  Additionally, and in the alternative, Counts II and III seek to avoid and recover the Transfers as constructive fraudulent transfers pursuant to 11 U.S.C. §§544, 548 and 550 and Del. Code Ann., title 6, §§ 1304 and 1305.  Count IV seeks, pursuant to 11 U.S.C. § 502(d), to disallow any claims filed or held by Oval in the Chapter 11 Cases pending repayment of the alleged Transfers.

Oval seeks dismissal of the Complaint, under Rule 12(b)(6), on the grounds that the Complaint fails to plead facts that: (i) demonstrate that the Transfers were transfers of property of the Debtors to a creditor; (ii) properly identify the transferor and transferee(s) of the Transfers

---

[7] *See* D.I. 644 (Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code).

[8] D.I. 694.

[9] D.I. 592 (Plan) at §§ 1.116, 6.21.

[10] *See* Adv. D.I. 1 (Compl.) at ¶¶ 194-195, 206-207, 218.

3

that PCT seeks to recover; (iii) identify the amount and nature of each antecedent debt on account of which the Transfers were allegedly made; and (iv) demonstrate the Debtors did not receive reasonably equivalent value in exchange for the Transfers.

### B. Factual Background[11]

Prime was a crypto company. Thousands of other crypto companies used Prime primarily to gain access to the U.S. banking system by converting crypto to fiat, which is commonly referred to as "on-and-off ramp." The Nevada Financial Institutions Division shut down Prime in June 2023 and, in August 2023, Prime filed for bankruptcy.

Oval operates a platform which provides financial technology companies and financial institutions primarily located in Africa and India with access to decentralized finance ("DeFi") lending protocols for overcollateralized lending and yield generation opportunities. Oval "converts local currencies and US dollars into digital dollar stablecoins, then spreads these stablecoins across secure DeFi lending protocols to generate high interest yield."[12]

To effectuate these services, in 2022, Oval's CEO Chinedu Okpala engaged Prime for liquidity purposes and to serve as an "on-and-off ramp" and "payment rail". Specifically, Oval transferred fiat and crypto to Prime (the "on ramp"). Prime then held and controlled the assets until either: (i) Oval instructed Prime to transfer fiat, or convert crypto to fiat for transfer, to others on behalf of and pursuant to Oval's directions for a fee (the "payment rail"); or (ii) Oval

---

[11] The Court adopts the facts from the Complaint, accepting all of the Complaint's well-pleaded facts as true and disregarding any legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

[12] Adv. D.I. 1 (Compl.) at ¶ 3.

withdrew the value of certain fiat and crypto that it previously transferred to Prime (the "off ramp").[13]

The following agreements governed Prime and Oval's relationship during the Preference Period: (i) Prime Trust User Agreement (the "User Agreement"), revision date March 7, 2022; and (ii) Prime Trust API Technology Agreement, effective March 31, 2022 (the "API Agreement") (collectively, the "Agreements").[14]

The API Agreement provides: "This Agreement is not intended and shall not be construed . . . to create any fiduciary relationship or any other obligations other than those expressly imposed by this Agreement."[15]

The User Agreement states that Prime may "pledge, repledge, hypothecate, rehypothecate, sell, or otherwise transfer or use any amount of such [assets] . . . with all attendant rights of ownership and without any obligation to maintain in its possession or control a like amount of cash or Fiat Currency[.]"[16]

The User Agreement further provides that "[Oval] may not loan, hypothecate, pledge, or otherwise encumber any Custodial Property. [Oval] grants Prime Trust a right of set-off against, and lien on and security interest in the Custodial Property for the payment of any Fees and any other amounts due to Prime Trust under and in accordance with this Agreement."[17]

---

[13]  Adv. D.I. 1 (Compl.) at ¶ 4.

[14]  Adv. D.I. 1 (Compl.) at ¶ 5, Ex. A-B.

[15]  Adv. D.I. 1 (Compl.) at Ex. B, API Agreement, § 9.4.

[16]  Adv. D.I. 1 (Compl.) at Ex. A, User Agreement, § 1.6(b).

[17]  Adv. D.I. 1 (Compl.) at Ex. A, User Agreement, § 6.

The fiat that Oval transferred to Prime was held in commingled "omnibus" bank accounts in Prime's name.  These omnibus bank accounts commingled the fiat Oval transferred to Prime with fiat from Prime's other customers and with fiat Prime generated from its business operations.[18]

The crypto that Oval transferred to Prime was held in commingled "omnibus" digital wallets (the "Omnibus Wallets"), which also held crypto transferred to Prime by other customers and Prime's own crypto.[19]

Prime attempted to keep track of commingled fiat and crypto transferred by Oval (and other customers) with an internal, omnibus ledger (the "Internal Ledger").  But the Internal Ledger was errantly and later intentionally corrupted by Prime.[20]  Current and former Prime employees admitted under oath that the Internal Ledger includes false information and falsified entries.[21]

The third-party expert retained by PCT, James P. Brennan, concluded that it is impossible to identify, trace, or otherwise distinguish the fiat and crypto that Oval transferred to Prime from the fiat and crypto transferred to Prime by Prime's other customers or from Prime's own fiat and crypto.[22]

Bank account statements and blockchain data confirm that the fiat and crypto transferred from Prime to Oval during the Preference Period was not the original fiat and crypto that Oval

---

[18]  Adv. D.I. 1 (Compl.) at ¶ 11.

[19]  Adv. D.I. 1 (Compl.) at ¶ 12.

[20]  Adv. D.I. 1 (Compl.) at ¶ 13.

[21]  Adv. D.I. 1 (Compl.) at ¶ 14.

[22]  Adv. D.I. 1 (Compl.) at ¶ 15 and Ex. C (Declaration of James P. Brennan (the "Brennan Decl.")).

transferred to Prime.[23]  The Transfers were fiat from the commingled, omnibus bank accounts in Prime's name and crypto from the commingled Omnibus Wallets.[24]

In December 2021, Prime discovered it was unable to access a digital wallet (the "98f Wallet") holding more than 11,000 ETH that had been transferred by one of Prime's customers.[25] Prime did not possess sufficient ETH without access to the 98f Wallet to fulfil its customers' transfer requests; and, as a result, went to the market to purchase ETH to cover transfer requests.[26]  To fund the market purchasers, Prime used fiat from its omnibus bank accounts.[27] Prime's use of fiat transferred by other customers to purchase replacement ETH left Prime with a nearly $82 million shortfall in the omnibus bank accounts that contained commingled fiat from Oval and other Prime customers.[28]

Prime falsified wire transfer entries to cover its replacement ETH purchases[29] and failed to properly reconcile and record transactions on its Internal Ledger, which resulted in Prime being unable to trace fiat and crypto to any specific deposits, withdrawals, or transfers made by any particular customer, including Oval.

---

[23]  Brennan Decl. at ¶¶ 147, 149, and 153.

[24]  Brennan Decl. at ¶¶ 147-154.

[25]  Adv. D.I. 1 (Compl.) at ¶ 17.

[26]  Adv. D.I. 1 (Compl.) at ¶¶ 17-18.

[27]  Adv. D.I. 1 (Compl.) at ¶ 18.

[28]  Adv. D.I. 1 (Compl.) at ¶ 20.

[29]  Adv. D.I. 1 (Compl.) at ¶ 21.

## ANALYSIS

### A.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), challenges the sufficiency of the factual allegations in a complaint.[30]  Rule 12(b)(6) is related to Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[31]  When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[32]  Two "working principles" underly this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.  Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[33]

Under this pleading standard, a complaint must nudge claims "across the line from conceivable to plausible."[34]  The movant carries the burden of showing that dismissal is

---

[30]  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[31]  Fed. R. Civ. P. 8(a)(2) and 12(b)(6), Fed. R. Bankr. P. 7008 and 7012.

[32]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (cleaned up).

[33]  *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted).

[34]  *Twombly*, 550 U.S. at 547.

appropriate.[35]  The relevant record for consideration includes the complaint and any document "integral to or explicitly relied upon in the complaint."[36]

In analyzing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis.  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[37]  Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[38]  Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[39]  After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[40]

## B. Property of the Debtors' Estate

Oval asserts that the Complaint does not establish that the Transfers involved the "Debtors' Property."  Oval argues that the Agreements governed the relationship between the parties and that the Transfers were to satisfy debt Prime owed to Oval under the terms of those Agreements.  Oval maintains that the Agreements negate the Plaintiff's conclusory allegations that the Transfers never constituted the Debtors' property.

---

[35] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.*), 496 F. Supp. 2d 404, 408 (D. Del. 2007).

[36] *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)).

[37] *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675).

[38] *Id.  See also Fowler*, 578 F.3d at 210–11 (citing *Iqbal*, 556 U.S. at 679).

[39] *Santiago*, 629 F.3d at 130.

[40] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (footnotes omitted).

PCT responds that Prime had legal or equitable interest in the property under section 541 of the Bankruptcy Code.[41]  It maintains that the relationship between the parties was a debtor-creditor relationship (not a fiduciary or trustor-trustee relationship) and that Prime held the fiat Oval transferred to it in bank accounts in Prime's own name over which Prime had exclusive control.  PCT refers to section 1.6(b) of the User Agreement, which states: "Prime had complete discretion to invest, rehypothecate, hold and register in its own name, and otherwise transfer or use funds transferred by Oval to Prime as well as retain the profits derived from the funds that Oval transferred to Prime."[42]  Prime argues it held the fiat Oval transferred to it in bank accounts in Prime's own name (i.e., Prime Trust LLC's name) over which Prime had exclusive control.[43]  PCT also asserts that the Complaint details how the fiat and crypto transferred to Prime from Oval cannot be traced because the assets were commingled in omnibus bank accounts and omnibus digital wallets with fiat and crypto from other Prime customers and even from Prime's own business operations.[44]

In July 2025, subsequent to briefing on the Motion to Dismiss, the Court considered whether Currency held by the Debtors was property of the Debtors' estate, and held:

> The Plan Administrator asserts that the Debtors did not form a trust
> or fiduciary relationship with their Integrators or End-Users.  The
> Objectors assert that a trust relationship was formed.  The case
> ultimately turns on the fact that creditors' assets cannot be
> separately identified, segregated, traced or otherwise specifically
> identified.  The overwhelming evidence establishes that the

---

[41]  Section 541 of the Bankruptcy Code defines "property of the estate" as "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

[42]  Adv. D.I. 1 (Compl.) at ¶ 67.

[43]  Adv. D.I. 1 (Compl.) at ¶¶ 71, 73, 74, 75, and 76.

[44]  Adv. D.I. 1 (Compl.) at ¶¶ 16, 20, 71–119, 135–138, 157, 169, 185–188, 190. *See also* Brennan Decl. at ¶ 154 (concluding that it is impossible for any party to trace the specific funds that Oval originally transferred to Prime).

> Debtors hopelessly commingled assets. "Money paid from a bank account containing commingled funds under a debtor's control is presumptively property of the debtor."  Therefore, the Currency is property of the Debtors' Estates.[45]

The Court determined the assets were comingled.  Additionally, the Court found that the language of the User Agreement does not establish a trust relationship between the End-Users, Integrators, and/or the Debtors.[46]  At the motion to dismiss stage, and based on the prior ruling of the Court, PCT has pled sufficient facts to establish that the cryptocurrency and USD held by the Debtors is property of the estate.

### C.  Count I

#### 1.  Requisite Detail in Complaint

Oval argues that Count I of the Complaint fails to state a claim under section 547 of the Bankruptcy Code and falls short of the pleading requirements of Rule 8(a)(2).  More specifically, Oval asserts the Complaint does not identify the date, amount, or transferee and transferor of each alleged transfer, or the nature and amount of each antecedent debt, and that the Agreements expressly limit the amount of any potential antecedent debt owed by the Debtors.

"To establish a plausible preference claim, the plaintiff must (i) identify the nature and amount of each antecedent debt; (ii) identify each alleged preference; and (iii) allege that it conducted reasonable due diligence into the defendant's known or reasonably knowable affirmative defenses.  Satisfaction of these elements is generally sufficient to establish a

---

[45]  *In re Prime Core Techs. Inc.*, 673 B.R. 148, 166 (Bankr. D. Del. 2025) (the "<u>Distribution Opinion</u>").  The Distribution Opinion defined "<u>Currency</u>" as (i) cryptocurrency and (ii) USD (United States Dollars), but not foreign currencies. *Id.* at 151 n. 3.

[46]  *In re Prime Core Techs. Inc.*, 673 B.R. at 167.

plausible claim that gives enough factual detail to put the defendants on notice of the claims against them."[47]

### a. Identify the Nature and Amount of Each Antecedent Debt and Each Alleged Preference

The Complaint and the Brennan Declaration identify the four debtors in the Chapter 11 Cases as the "Debtors" or "Prime."[48]  The Complaint alleges that "Prime transferred $26,644,776.49 USD from Prime's BMO x3077 account to Oval during the Preference Period (the "Fiat Transfers"); and "Prime also transferred to Oval 1,000 USDT, 0.76 ETH, 12, 138 USDC, and 0.95 BTC from its Omnibus Wallets during the Preference Period ("Crypto Transfers")."[49]  The Complaint also alleges that the Transfers from "Prime to Oval made during the Preference Period were transferred from one of Prime's accounts at [BMO Harris Bank, N.A. ("BMO")]" pursuant to a Master Services Agreement between Prime Trust, LLC and BMO.[50] The Complaint continues that Prime Trust, LLC was the sole "Legal Entity for Which Beneficial Ownership is Being Provided" from BMO.[51]  As to the Fiat Transfers, the Complaint states the name of the debtor/transferor.  Exhibit I to the Complaint identifies Oval's Outgoing API Data and includes the date of the transaction, amount of transaction, account number, and the user at Oval who requested the transaction.[52]

---

[47] *Off. Comm. of Unsecured Creditors v. Nimble Gravity, LLC (In re Pack Liquidating, LLC)*, No. 22-10797, 2024 WL 4633499, at *2 (Bankr. D. Del. Oct. 30, 2024) (cleaned up; footnotes and citations omitted).

[48] *See* Adv. D.I. 1 (Compl.) at n. 1 and Ex. C (Brennan Decl.) at n.1.

[49] Adv. D.I. 1 (Compl.) at ¶¶ 185 and 189.

[50] Adv. D.I. 1 (Compl.) at ¶ 73.

[51] Adv. D.I. 1 (Compl.) at ¶ 76.

[52] Adv. D.I. 1 (Compl.) at Ex. I (API Data for All Oval Transactions).

Oval argues that PCT failed to identify the specific Oval entity that allegedly received each Transfer. Defendants maintain that the reference to Mr. Okpala as principle of both Defendants inadequately identifies the transferee of each transfer and, if Oval Labs was the transferee, then Counts I-IV of the Complaint should be dismissed against Oval Finance. PCT responds that it identifies the specific individual (Mr. Okpala) who authorized the fiat Transfers on behalf of *Oval Labs*.[53] Further Mr. Brennen states: "Using API log audit data, I confirmed that Chinedu Okpala, utilizing the email address chinedu@ovalfi.com, directed each of the Fiat Transfers for or on behalf of Oval. The API log audit data also reflects the 'Activities User Name' for these Fiat Transfers as Oval Labs, Inc."[54] Additionally, the signatory parties to the User Agreement and the API Agreement are Prime Trust and Oval Labs.[55] The Complaint does not identify Oval Finance as the transferee of any of the Transfers and as a result, Oval Finance must be dismissed from this adversary proceeding.

### b. Due Diligence Requirement

The last element, under section 547(b), imposes a due diligence requirement on PTC. "To satisfy § 547(b), the plaintiff only needs to allege that it conducted reasonable due diligence into the defendant's known or reasonably knowable affirmative defenses."[56] Here, PTC has done so.[57]

---

[53] Adv. D.I. 13 (PCT Opposition Brief to Motion to Dismiss) at ¶ 40.

[54] Brennan Decl. at ¶ 134.

[55] Adv. D.I. 1 (Compl.) at Ex. A-B.

[56] *In re Pack Liquidating, LLC*, No. 22-10797, 2024 WL 4633499 at *3.

[57] Adv. D.I. 1 (Compl.) at ¶ 206.

The facts in the Complaint are sufficient to allege a plausible preference claim as to defendant Oval Labs, but not as to Oval Finance.

### 2. Agreements Do Not Expressly Limit Amount of Liability

Oval argues that the Complaint does not allege that each transfer was "for or on account of antecedent debt owed by the debtor before such transfer was made." And even if the Complaint made those allegations, Oval contends the Agreements between the Debtors and Oval expressly cap the amount of any antecedent debt that could be claimed by the Debtors.

Section 13.2 of the User Agreement states:

> TO THE EXTENT PERMITTED BY APPLICABLE LAW, [OVAL LABS, INC.] HEREBY ACKOWLEDGES AND AGREES UNDER NO CIRCUMSTANCES WILL [PRIME TRUST'S] TOTAL LIABILITY OF ANY AND ALL KINDS ARISING OUT OR RELATED TO THIS AGREEMENT (INCLUDING WARRANTY CLAIMS), REGARDLESS OF THE FORM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, NEGLIGENCE OR OTHERWISE, EXCEED THE GREATER OF $500.00 OR THE TOTAL AMOUNT OF FEES PAID, IF ANY, BY [OVAL LABS, INC.] TO PRIME TRUST IN ACCORDANCE WITH THIS AGREEMENT DURING THE 12-MONTH PERIOD PRIOR TO THE OCCURRENCE OF THE EVENT GIVING RISE TO SUCH LIABILITY.[58]

Additionally, Section 6.2 of the API Agreement, Terms and Conditions states:

> [OVAL LABS, INC.] HERBY ACKNOWLEDGES AND AGREES UNDER NO CIRCUMSTANCES WILL PRIME TRUST'S TOTAL LIBIALITY OF ALL KINDS ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO WARRANTY CLAIMS), REGARDLESS OF THE FORM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, OR OTHERWISE, EXCEED THE TOTAL AMOUNT OF TECHNOLOGY LICENSE FEES PAID, IF ANY, BY [OVAL LABS, INC.] TO PRIME TRUST UNDER THIS AGREEMENT

---

[58] Adv. D.I. 1 (Compl.) at Ex. A (User Agreement), §13.2.

14

DURING THE THREE (3) MONTHS PERIOD PRIOR TO THE OCCURRENCE OF THE EVENT GIVING RISE TO SUCH LIABILITY.[59]

Oval asserts that the "maximum" antecedent debt is limited to either: (a) the total amount of "Fees" paid by Oval under the User Agreement during the prior twelve months; *or* (b) the Technology License Fees paid by Oval under the User Agreement during the prior three months.

"In order to allege the nature and amount of an antecedent debt successfully, the complaint must identify the amounts owed, describe the relationship between the parties, and link the allegedly preferential transfers to that relationship."[60]  In *In re Pack Liquidating, LLC*, the defendant asserted that it entered into three contracts with the debtor and that the plaintiff did not adequately plead the nature and amount of antecedent debt because it did not specify which of the agreements gave rise to the preferential payment.[61]  The *Pack Liquidating* court held that the plaintiff was not required to identify the specific agreements but only needed to provide enough detail to allow the defendant to identify the transfers subject to the complaint.[62]  At the motion to dismiss stage, the complaint "does not need to apprise a defendant of everything it might wish to know about the plaintiff's claims.  It only needs to allege facts showing that the plaintiff is entitled to relief."[63]

Here, PCT was required to provide sufficient information to identify the alleged preferential transfers, which it provided.  If Oval disputes the alleged liability, and asserts that

---

[59]  Adv. D.I. 1 (Compl.) at Ex. B (API Agreement), Ex. B (API Technology Agreement Terms and Conditions), § 6.2.

[60]  *In re Pack Liquidating, LLC*, No. 22-10797, 2024 WL 4633499 at *2.

[61]  *Id.*

[62]  *Id.* at *3.

[63]  *Id.*

such liability, if any, is capped based on the Agreements, then Oval can raise such arguments in

defense of the Complaint.  However, at the motion to dismiss phase, the Complaint must allege

enough detail to allow Oval to identify the (alleged) preferential transfers subject to the

Complaint, which the Complaint does.

### D.  Count II

Oval argues that Count II of the Complaint fails to adequately plead a constructive

fraudulent transfer claim under section 548(a)(1)(B) of the Bankruptcy Code.

Section 548(a)(1) of the Bankruptcy Code states:

> The trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> * * *
>
> (B)  (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[64]

Oval asserts that the Transfers involved a transfer of the *very same* value to Oval that the Debtors

received from Oval.  Therefore, Oval contends that PCT cannot assert that the Debtors did not

---

[64]  11 U.S.C.A. § 548(a)(1)(B) (West).

receive reasonably equivalent value in exchange for the Transfers.  Oval further argues that the Complaint does not allege facts that "(a) detail all of the fiat currency and cryptocurrency received by the Debtors prior to the alleged Transfers, or (b) support the Plaintiff's conclusory allegation that the Debtors did not receive reasonably equivalent value."

"All that is needed at this stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."[65]  At this stage, PCT must identify the Transfers by date and face amount and allege that it was for no consideration.[66]

Here, the Complaint alleges that the incoming amount of fiat and crypto transferred from Oval to Prime, prior to and during the Preference Period, and the outgoing amount of fiat and crypto transferred from Prime to Oval were not of reasonably equivalent value.[67]  Reasonably equivalent value is a "factual determination" which cannot be made on a motion to dismiss.[68]  PCT must adequately allege, and it has, that reasonably equivalent value was not provided by Oval in connection with the Transfers to withstand a motion to dismiss.[69]

The facts in the Complaint are sufficient to allege a plausible constructive fraudulent transfer claim.

---

[65] *Insys Liquidation Tr. v. McKesson Corp. (In re Insys Therapeutics, Inc.)*, No. 19-11292(JTD), 2021 WL 3083325, at *6 (Bankr. D. Del. July 21, 2021) (citations omitted; cleaned up).

[66] *Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*, No. 03-12656 (MFW), 2008 WL 4239120, at *8 (Bankr. D. Del. Sept. 16, 2008).

[67] Adv. D.I. 1 (Compl.) at ¶¶ 184-195; *see also* Adv. D.I. 1 (Compl.) at Ex. C (Brennan Decl.) at ¶¶ 133-152.

[68] *EPLG, LLC v. Citibank, N.A. (In re Qimonda Richmond, LLC)*, 467 B.R. 318, 327 (Bankr. D. Del. 2012).  *See also BYJU's Alpha, Inc. v. Camshaft Cap. Fund, LP (In re BYJU'S Alpha, Inc.)*, No. 24-10140 (JTD), 2025 WL 659092, at *16 (Bankr. D. Del. Feb. 27, 2025) (same); *Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*, No. 16-11596 (KG), 2019 WL 4447545, at *9 (Bankr. D. Del. Sept. 16, 2019) (same).

[69] *See In re Qimonda Richmond, LLC*, 467 B.R. at 327.

## E.  Counts III and IV

As noted above, Count III seeks recovery of avoided transfers from Oval pursuant to 11 U.S.C. § 550, and Count IV seeks disallowance of any claim filed by Oval pursuant to 11 U.S.C. § 502(d).[70]  Oval argues that Counts III and IV fail because the Complaint fails to state a claim as to Counts I and II.

Claims pursuant to sections 550 and 502(d) are derivative of the preference and constructive fraudulent transfer claims.[71]  Because the underlying claims are not being dismissed as to Oval Labs, claims under 550 and 502(d) are similarly not being dismissed as to Oval Labs.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss will be granted, in part, and denied, in part.  The Complaint will be dismissed as to Oval Finance.  An Order will be issued.

Dated: June 18, 2026

J. Kate Stickles
United States Bankruptcy Judge

---

[70]  Adv. D.I. 1 (Compl.) and ¶¶ 216-222 (Counts III and IV).

[71]  *Anderson News, LLC v. The News Group, Inc. (In re Anderson News, LLC)*, No. 09-10695 CSS, 2012 WL 3638785, at *4 n. 31 (Bankr. D. Del. Aug. 22, 2012).